UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| RYAN QUINN, and YIZHANG QUINN, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | Civil Action No. 18-10705-LTS |
| HEWLETT-PACKARD FINANCIAL SERVICES COMPANY, HEWLETT-PACKARD FINANCIAL SERVICES (INDIA) PRIVATE LIMITED, HP INC., HEWLETT PACKARD ENTERPRISE COMPANY, and DAVID GILL, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

ORDER ON MOTION TO DISMISS (DOC. NO. 12)

November 21, 2018

SOROKIN, J.

Plaintiffs Ryan Quinn ("Mr. Quinn") and Yizhang Quinn ("Mrs. Quinn") allege that Defendants HP, Inc. ("HPI"), Hewlett Packard Enterprise Company ("HPE"), Hewlett-Packard Financial Services Company ("HPFS"), Hewlett-Packard Financial Services (India) Private Limited ("HPFS India"), and David Gill caused the imprisonment of three of Mr. Quinn's colleagues in December 2012 and then failed to assist in securing their release. The plaintiffs seek damages for injuries they allegedly sustained during the imprisonment.[1] The defendants have filed a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal

---

[1] This case shares its factual background with another older case pending before this Court. See Integrated Commc'ns & Techs., Inc. v. Hewlett-Packard Fin. Servs. Co., Civ. No. 16-10386-LTS (D. Mass. filed Feb. 23, 2016).

1

Rules of Civil Procedure. Doc. No. 12. The plaintiffs opposed. Doc. No. 26. For the reasons set forth below, this Court ALLOWS the defendants' motion to dismiss.[2]

I. BACKGROUND

Defendants HP, Inc. ("HPI") and Hewlett Packard Enterprise Company ("HPE") are two corporations resulting from the split of Hewlett-Packard Company ("HP"). Doc. No. 10 ¶ 5. Defendant Hewlett-Packard Financial Services Company ("HPFS") was a wholly-owned subsidiary of HP and is now a wholly-owned subsidiary of HPE. Id. ¶ 3. Defendant Hewlett-Packard Financial Services (India) Private Limited ("HPFS India") is a wholly-owned subsidiary of HPFS. Id. ¶ 4. Defendant David Gill is the Assistant General Counsel and Assistant Secretary of HPFS. Id. ¶ 7.

At all relevant times, Mr. Quinn worked for Integrated Communications & Technologies, Inc. ("ICT"), an asset recovery business that re-markets used IT equipment. Id. ¶¶ 16–18. As ICT's "Asia Director," Mr. Quinn was responsible for overseeing the company's sales operations in China and managing a three-member sales team. Id. ¶ 17.

In June 2011, the defendants offered to sell ICT a batch of IT equipment that they had previously leased to another company (the "Equipment"). Id. ¶¶ 21–23. The defendants and ICT executed two contractual documents referred to as the Referral and Revenue Share Agreement ("RRSA") and the Whole Sale Agreement ("WSA"). Id. ¶ 31. Pursuant to these agreements, the defendants contracted to sell the Equipment to a third-party broker, and ICT promised to purchase the Equipment from the broker, re-market the Equipment for a profit, and share the net proceeds with the defendants. Id. ¶¶ 31–32. At all relevant times, the defendants represented to

---

[2] Finding that a motion hearing is not necessary in this matter because the papers adequately present the issues, the Court resolves this matter on the papers. See L.R. 7.1(f).

2

ICT that the Equipment was manufactured by H3C Technologies Co., Ltd. ("H3C"), an HP affiliate in China. Id. ¶¶ 30–35. In anticipation of this arrangement, ICT pursued prospective customers to purchase the first installment of the Equipment. Id. ¶ 39.

In December 2011, ICT paid for and received the first installment of the Equipment. Id. ¶ 38. Shortly thereafter, Mr. Quinn's sales team discovered that the Equipment was in substandard condition and was forced to re-sell it to different customers at a lower price. Id. ¶¶ 40–41. As Mr. Quinn and his sales team continued their efforts to re-sell the Equipment, H3C reported to Chinese authorities that ICT was selling counterfeit H3C products. Id. ¶ 44. H3C asked the police in China to "confiscate and destroy" the Equipment as well as "seriously punish" the individuals responsible for selling it. Id. ¶ 45.

On December 7, 2012, the local Chinese police raided ICT's offices in China, seized the allegedly counterfeit Equipment, and arrested two members of Quinn's sales team. Id. ¶ 46. The police arrested the third member of the sales team on December 21, 2012. Id. At that time, the plaintiffs and ICT first learned that the Equipment was counterfeit. Id. Mr. Quinn alleges that, after learning of the allegations and the arrests, he "feared for his family's safety and was forced to flee China with his wife and son." Id. ¶ 51. In an attempt to exonerate his sales team members, Mr. Quinn tried to explain to the Chinese police that the defendants sold the counterfeit Equipment to ICT "as genuine H3C Equipment." Id. ¶ 54.

In January 2013, ICT sought assistance from the defendants in securing the release of the sales team members. Id. ¶ 56. At that time, Mr. Quinn emailed an HPFS representative asking the defendants to "straighten out [the] issue internally with HP China & H3C China, and have it clarified with Police." Id. ¶ 57. He also asked them to submit a "formal letter from HP . . . explaining the situation [and] stating that ICT did in fact buy this batch of H3C material from

3

HP." Id. ¶ 57. When the defendants did not respond after ten days, Mr. Quinn reiterated this request in another email. Id. ¶ 59.

The defendants' legal team responded to these requests and indicated to the CEO of ICT, Alexander Styller, that the defendants intended to provide a letter confirming that HPFS sold counterfeit products to ICT. Id. ¶ 60. The defendants also represented that they planned to conduct an internal audit of the Equipment, but were experiencing issues with "custom clearance." Id. ¶¶ 67–68. In the following weeks, Mr. Styller exchanged several emails with the defendants inquiring as to the status of the inspections and continuously requesting the promised letter. Id. ¶¶ 68–70.

The plaintiffs allege that "[t]hroughout the course of the back and forth correspondence between [the defendants] and ICT, [Mr. Quinn] worked tirelessly every day to maintain the channels of communication among [Mr. Styller], the Chinese lawyers and the families of [the sales team members] who remained incarcerated" Id. ¶ 79. They further claim that the defendants' "evasiveness and failure to answer basic questions regarding the authenticity of the Equipment, and refusal to provide ICT and the Chinese authorities with exculpatory information and documentation" caused Mr. Quinn to suffer "from stress, insomnia and anxiety" as he worked to secure the release of his colleagues. Id. ¶ 80.

On March 12, 2013, Mr. Quinn wrote to Mr. Styller regarding the defendants' "motives for refusing to answer Mr. Styller's basic questions concerning the outcome of the inspections." Id. ¶ 71. In an email to Mr. Styller, Mr. Quinn stated that the defendants "are hesitant to answer this as they can smell a lawsuit . . . [and] are bringing up the customs issue & incorporation as a defense strategy." Id. The defendants sent ICT a draft of the requested letter on March 27, 2013, but delayed submitting the letter to the Chinese authorities for several weeks. Id. ¶ 82.

On April 9, 2013, Mr. Quinn again wrote to Mr. Styller regarding the status of the defendants' letter, stating that "[i]t was promised early this week. Lots more upset calls and emails from families these two days." Id. ¶ 83.

On April 22, 2013, the defendants submitted the requested letter to the Chinese police. Id. ¶ 84. The defendants claimed that the letter was "substantially the same" as the initial copy, but the plaintiffs allege that it included "misleading statements, which omitted or mischaracterized key facts." Id. ¶¶ 84–85. The submission of this letter did not result in the immediate release of the sales team members. Id. ¶ 86. As such, the plaintiffs assert that "a complete, honest and timely disclosure to the Chinese authorities . . . could have effectively led to the release of [the sales team members] . . . and would have relieved [Mr. Quinn] from the prolonged and continued mental anguish from which he suffered…" Id.

On July 18, 2013, the members of Quinn's sales team were released from imprisonment due to a lack of sufficient proof to support the allegations. Id. ¶ 89. The defendants refused to compensate ICT for its reputational and business losses resulting from the accusations. Id. ¶ 90. In 2014, ICT and the defendants negotiated a Return Merchandise Agreement ("RMA"), pursuant to which the defendants promised to refund ICT for the amount it paid for the unsold Equipment in the first installment. Id. ¶¶ 91-92. The defendants, however, refused to proceed with documenting the agreement and never issued a refund to ICT. Id. ¶¶ 93, 97. ICT ultimately closed its office in China, and, as a result, Mr. Quinn lost his job. Id. ¶ 99. Due to the loss of his employment, Mr. Quinn suffered "serious financial, emotional, and mental injuries." Id.

In December 2015, Mr. Quinn's sales team members began receiving letters from the Chinese government officially closing the case against them. Id. ¶ 102. The last of these letters arrived in May 2016. Id.

The plaintiffs filed their original Complaint on April 11, 2018, alleging fraudulent misrepresentation (Count I), intentional infliction of emotional distress (Count II), negligent infliction of emotional distress (Count III), and loss of consortium (Count IV). Doc. No. 1. On July 16, 2018, they filed the First Amended Complaint ("FAC") asserting an additional claim for breach of contract against all defendants (Count V). Doc. No. 10. The defendants filed a motion to dismiss arguing that the FAC asserts time-barred claims and lacks sufficient factual allegations to support a claim for relief. Doc. No. 13.

II. STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating a complaint, the court must accept all factual allegations in the complaint as true and construe all reasonable inferences in the plaintiff's favor. Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993). However, conclusory statements and "threadbare recitals of the elements of a cause of action" are not entitled to a presumption of truth. Iqbal, 556 U.S. at 678. A reviewing court must conduct a "context-specific" assessment of the pleadings by drawing on "its judicial experience and common sense." Maldonado v. Fontanes, 568 F.3d 263, 269 (1st Cir. 2009) (quoting Iqbal, 556 U.S. at 663-64). A complaint must be dismissed for failure to state a claim when it lacks "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997).

III. ANALYSIS

   1. Mr. Quinn's Tort Claims

The defendants argue that the claims asserted in Counts I, II, and III of the FAC are subject to dismissal for failure to state a claim because the applicable statute of limitations had run prior to the commencement of this action. Doc No. 13 at 5. When a defendant raises the statute of limitations, the plaintiff bears the burden of demonstrating that the claims are not time-barred. Zamboni v. Aladan Corp., 304 F. Supp. 2d 218, 223 (D. Mass. 2004); Franklin v. Albert, 411 N.E.2d 458, 463 (Mass. 1980). This requires the plaintiff to establish facts that take the case "outside the impact of the statute of limitations." Zamboni, 304 F. Supp. 2d at 223.

All of Mr. Quinn's claims are governed by Massachusetts law, which requires that tort claims be filed "within three years next after the cause of action accrues." Mass. Gen. Laws ch. 260, § 2A. Here, each of Mr. Quinn's tort claims are subject to the three-year statutory period. See Tagliente v. Himmer, 949 F.2d 1, 4 (1st Cir. 1991) (ruling that fraudulent misrepresentation is a tort claim subject to the three-year statute of limitations under Massachusetts law); Shea v. Ditech Fin. LLC, 255 F. Supp. 3d 273, 278 (D. Mass. 2017) (applying the three-year statutory period to a tort claim for intentional infliction of emotional distress); Coulsey v. Option One Mortg. Corp., No. 15-CV-10471-MGM, 2016 WL 8710881, at *4 (D. Mass. Sept. 30, 2016) (holding that claims for negligent infliction of emotional distress are governed by the three-year statute of limitations in Massachusetts). Since the plaintiffs filed the FAC in April 2018, the Court must determine whether Mr. Quinn's tort claims accrued at any time during the three preceding years.

A cause of action in tort begins to accrue at the time of injury. Tagliente, 949 F.2d at 4. However, Massachusetts courts will apply a "discovery rule" to toll the statute of limitations in

7

cases where the factual basis for the cause of action is "inherently unknowable" at the time of injury. Gonzalez v. United States, 284 F.3d 281, 288-89 (1st Cir. 2002); Bowen v. Eli Lilly & Co., 557 N.E.2d 739, 740–42 (Mass. 1990). "The factual basis for a cause of action is 'inherently unknowable' if it is 'incapable of detection by the wronged party through the exercise of reasonable diligence.'" Gonzalez, 284 F.3d at 288-89 (citing Geo. Knight & Co. v. Watson Wyatt & Co., 170 F.3d 210, 213 (1st Cir. 1999)). Under the discovery rule, a cause of action begins to accrue when "a plaintiff discovers, or … when she should reasonably have discovered, that she has been harmed or may have been harmed by defendant's conduct." Rice v. Santander Bank, N.A., 196 F. Supp. 3d 146, 153 (D. Mass. 2016) (citing Bowen, 557 N.E.2d at 742). For a claim to accrue, the plaintiff "need not apprehend the full extent or nature of an injury." Riley v. Presnell, 565 N.E.2d 780, 785 (Mass. 1991). Rather, a claim accrues as soon as a plaintiff has "(1) knowledge or sufficient notice that she was harmed and (2) knowledge or sufficient notice of what the cause of harm was." Bowen, 557 N.E.2d at 742.

In this case, the tort claims asserted in Counts I, II, and III are time-barred because they accrued when Mr. Quinn sustained his injuries in 2013. The plaintiffs allege that Mr. Quinn suffered mental and emotional injury during the seven months in 2013 when his sales team was imprisoned. Doc. No. 10 ¶¶ 79–80, 98–99, 122. The factual allegations in the FAC, even when viewed in the light most favorable to the plaintiffs, make clear that Mr. Quinn attributed these injuries to the defendants' ongoing failure to assist him in securing the release of his sales team. Id. ¶¶ 79, 80, 86. The plaintiffs have made no argument that the nature or cause of Mr. Quinn's injuries was inherently unknowable during the period in which his sale team was imprisoned.

The plaintiffs, on the other hand, argue that Mr. Quinn's tort claims did not accrue until at least December 2015, when the sales team members received letters from Chinese authorities

8

officially closing the criminal case against them. Doc. No. 26 at 5. In support of this position, the plaintiffs claim that, even as Mr. Quinn was suffering, he was "deceived into believing that Defendants were actually providing assistance or at least attempting to assist during the period of imprisonment." Id.

The Court rejects the plaintiffs' argument because, even if Mr. Quinn initially believed the defendants would assist him, Mr. Quinn's own email communications between January and April 2013 demonstrate that he came to associate his injuries with the defendants' conduct as the period of imprisonment progressed. Doc. No. 10 ¶¶ 71, 83. No matter the exact date on which the claims accrued, the factual allegations in the FAC clearly show that Mr. Quinn had sufficient notice of causation in 2013. The fact that he may not have realized the full extent of his suffering during the period of imprisonment is not sufficient to toll the statute of limitations. See Gore v. Daniel O'Connell's Sons, Inc., 461 N.E.2d 256, 260 (Mass. App. Ct. 1984) ("When an injury or disease resulting from injury becomes manifest, the statute of limitations does not stay in suspense until the full extent, gravity, or permanence of that same injury or consequential disease is known."). As such, Mr. Quinn's tort claims fail because the three-year limitations period had expired well before the plaintiffs filed this action in 2018. Therefore, the Court ALLOWS the defendants' motion to dismiss Counts I, II, and III.

2. Mrs. Quinn's Lost of Consortium Claim

Mrs. Quinn's loss of consortium claim also fails because it is not predicated on a valid and enforceable tort claim by Mr. Quinn. A claim for loss of consortium requires proof of a tortious act that caused the claimant's spouse to suffer personal injury. Tauriac v. Polaroid Corp., 716 F. Supp. 672, 673 (D. Mass. 1989); Sena v. Com., 629 N.E.2d 986, 994 (Mass. 1994). Since Mr. Quinn's tort claims are dismissed, Mrs. Quinn's loss of consortium claim cannot survive on

its own. See Kennedy v. Town of Billerica, 617 F.3d 520, 534 (1st Cir. 2010) (affirming the dismissal of loss of consortium claims predicated on time-barred personal injuries to the plaintiffs' parents); Hamilton v. Baystate Med. Educ. & Research Found., Inc., 866 F. Supp. 51, 57 (D. Mass. 1994), aff'd 66 F.3d 306 (1st Cir. 1995) (dismissing a loss of consortium claim where the spouse's underlying tort claims could not survive summary judgment); Short v. Town of Burlington, 414 N.E.2d 1035, 1036 (Mass. App. Ct. 1981) (rejecting a wife's loss of consortium claim because it was "entirely derivative and has no existence apart from" her husband's failed personal injury claim). Therefore, the Court ALLOWS the defendants' motion to dismiss Mrs. Quinn's loss of consortium claim in Count IV.

3. Mr. Quinn's Breach of Contract Claims

In Count V of the FAC, Mr. Quinn claims that the defendants breached their contractual obligations under the RRSA, the WSA, and the RMA by selling ICT counterfeit H3C Equipment and by failing to issue the agreed upon refund. Doc. No. 10 ¶¶ 128, 130. In support of this claim, Mr. Quinn has alleged damages that include "out of pocket losses, loss of profits, emotional distress and mental suffering, loss of consortium, [and] loss of earnings and employment." Id. ¶ 131. The defendants argue that Mr. Quinn's contract claim is time-barred because it is subject to the three-year statutory period and accrued in 2013 at the same time as Mr. Quinn's tort claims. As an alternative ground for dismissal, the defendants also challenge Mr. Quinn's standing to assert a breach of contract claim.

a. *Statute of Limitations*

Under Massachusetts law, "[a]ctions of contract, other than those to recover for personal injuries" are governed by a six-year statute of limitations. Mass. Gen. Laws ch. 260, § 2. However, the shorter three-year statutory period for tort claims will apply to a contract claim

10

"when the gravamen of the complaint is that the defendant has caused the plaintiff a personal injury." Callahan v. Wells Fargo & Co., 747 F. Supp. 2d 247, 252 (D. Mass. 2010) (citing Pagliuca v. City of Boston, 626 N.E.2d 625, 628 (Mass. App. Ct. 1994)). To determine whether the tort or contract limitations period applies, a court will look to "the essential nature" of the plaintiff's claim. Ansin v. River Oaks Furniture, Inc., 105 F.3d 745, 754–55 (1st Cir. 1997); see also Hendrickson v. Sears, 310 N.E.2d 131, 132 (Mass. 1974) (noting that "limitation statutes should apply equally to similar facts regardless of the form of proceeding"). A claim is considered a contract claim when it is "to recover from another money which in equity and good conscience he is not entitled to keep," while a tort claim involves "an accident resulting in injuries to person or property." Ansin, 105 F.3d at 754–55.

In this case, Mr. Quinn's contract claim is subject to the three-year statutory limitations period. Mr. Quinn's alleged damages, which include financial, mental, and emotional losses, undoubtedly constitute "personal injuries" within the meaning of the statute. See Pagliuca, 626 N.E.2d at 628 (finding that an employee's claim for breach of an employment contract against her employer alleging damages for "loss of income, loss of personal and professional reputation, career opportunities, mental and emotional distress, pain and suffering, and other damages and losses" was governed by the three-year statutory period). In addition, the plaintiffs do not argue that the defendants' sale of the counterfeit Equipment or failure to issue a refund directly caused Mr. Quinn's suffering. The factual allegations in the FAC instead state unequivocally that Mr. Quinn's injuries arose from the defendants' failure to assist him during the time of the imprisonment. Doc. No. 10 ¶ 101. As such, Mr. Quinn's contract claim is subject to the three-year limitations period under Massachusetts law because any contractual obligations the defendants owed to ICT are merely incidental to Mr. Quinn's injuries. Cf. Royal-Globe Ins. Co.

11

v. Craven, 585 N.E.2d 315, 320 (Mass. 1992) (applying the six-year limitations period where the defendant insurer's liability was not based on "its actions resulting in personal injury, but, rather, its contractual promise to indemnify against such injury.").

In applying the three-year statutory requirement, Mr. Quinn's contract claim is time-barred because it accrued at the same time as his tort claims. The allegations in the FAC, even construed in the plaintiffs' favor, demonstrate that Mr. Quinn had sufficient notice in 2013 as to the cause of his injuries. Since the plaintiffs did not file this action until 2018, the statute of limitations bars the contract claim in Count V.

### b. *Standing*

Finally, the defendants argue that Mr. Quinn lacks standing to bring a contract claim. Mr. Quinn does not claim that he was a party to the RRSA, the WSA, or the RMA. Rather, Mr. Quinn asserts that he was a third-party beneficiary of these contracts.

For a third party to recover on a contract claim, the plaintiff must show that he or she was an intended, rather an incidental, beneficiary. Spinner v. Nutt, 631 N.E.2d 542 (Mass. 1994). A plaintiff is considered an intended beneficiary when the "language and circumstances" of the contract indicate "clear and definite" intent that the plaintiff would benefit from the promised performance. Massachusetts Eye and Ear Infirmary v. QLT Phototherapeutics, Inc., 412 F.3d 215, 229 (1st Cir. 2005); Anderson v. Fox Hill Village Homeowners Corp., 676 N.E.2d 821 (Mass. 1997). The fact that a plaintiff would likely benefit from a contract does not itself render the plaintiff an intended beneficiary. Massachusetts Eye and Ear Infirmary, 412 F.3d at 229; Rymes Heating Oils, Inc. v. Springfield Terminal Ry., Inc., 265 F. Supp. 2d 147, 151 (D. Mass. 2003). A court must instead look to whether the contract provides "for the benefits of

performance to flow directly to the third-party." Pub. Serv. Co. of N.H. v. Hudson Light and Power Dept., 938 F.2d 338, 343 (1st Cir. 1991).

In this case, the plaintiffs have failed to allege sufficient facts to establish that Mr. Quinn was an intended beneficiary to any contract between ICT and the defendants. The FAC baldly asserts that Mr. Quinn was a "direct and intended beneficiary" of the WSA contract because he was a "principal" of ICT at that time. Doc. No. 10 ¶ 126. However, the pleadings are entirely devoid of factual allegations supporting an inference of "clear and definite" intent that Mr. Quinn would directly benefit from the sale of the Equipment. With respect to the RMA, there is no indication that the issuance of a refund to ICT would have conferred a direct benefit on Mr. Quinn. The Court has not identified, and the parties have not cited, any case where a Massachusetts court found that an employee constituted an intended beneficiary under an employer's contract with another entity based on nothing more than the existence of an employment relationship. Thus, Mr. Quinn is not entitled to recover on a breach of contract claim because he was merely an incidental beneficiary of the contractual relationship among ICT, the broker, and the defendants.

Accordingly, the Court ALLOWS the defendants' motion to dismiss with respect to Count V because the contract claim is time-barred under the statute of limitations in Massachusetts and because Mr. Quinn is not entitled to recovery as a third-party beneficiary.

IV. CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss is ALLOWED. The Clerk shall enter judgment forthwith with each side to bear its own fees and costs.

SO ORDERED.

 /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge